UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

YESH MUSIC, LLC,

                Plaintiff,

        v.

SEPHORA USA, INC.,

                Defendant.

-----------------------------------------------------------------x

Index No.: 16-cv-4913 (CBA)(RER)

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FILED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 SECTIONS 12(b)(2), 12(b)(3), 12(b)(7), and 12(b)(f)

---

Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.

250 Park Avenue, 7th Floor
New York, New York 10177
Telephone: (212)300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT………………………………………….  1

II.  PROCEDURAL HISTORY……………………………………………  6

III.  FACTS………………………………………………………………...  6

IV.  GENERAL LEGAL STANDARD……………………………………….  12

    A.  This Court Has Jurisdiction Pursuant To CPLR § 301(a)(1)………...  12
    B.  This Court Has Jurisdiction Pursuant To CPLR § 301(a)(2)…………  15
        This Court Has Jurisdiction Pursuant To CPLR § 301(a)(3)…………  15
    C.  This Court Has Jurisdiction Pursuant To CPLR § 301(a)(4)…………
    D.  This Court Has Jurisdiction Pursuant To CPLR § 301……………….  16

V.  Illegal Forum Shopping……………………………...……………………….  17

VI.  DEFENDANT'S MOTION PURSUANT TO
RULE (12)(b)(3) (VENUE) IS MOOTED
BY 28 U.S.C. § 1400(A)…………………………………………………  18

VII.  DEFENDANT'S MOTION PURSUANT
TO RULE 26(F) IGNORES SEVENTY
YEARS OF CASE-LAW……………………………………………………  18

VIII.  DEFENDANT'S APPLICATION FOR
A 1404(a) TRANSFER FAILS BY LAW………………………………...  19

    a.  Defendant is Prohibited From Submitting
An Affidavit on Reply……………………………………………………  20
    b.  Defendant's motion fails under
the traditional 1404 (a) analysis………………………………………...  20

        i.  Plaintiff's Choice of Forum weighs
against transfer…………………………………………………...  22
        ii.  Convenience of the witnesses weighs
against transfer………………………………………………….  23
        iii. The Relative Inconvenience of the
parties weighs against transfer…………………………………  24
        iv. Location of the documents
weighs against transfer…………………………………………  25
        v.  Ability to compel witnesses
weighs against transfer…………………………………………  25
        vi. Governing law weighs against transfer……………………………  26
        vii. Relative Means of the Parties
Weighs Against Transfer…………………………………………  26

IX.    DEFENDANT'S RULE 12(f) MOTION
       WOEFULLY FAILS TO COMPLY
       WITH PREVAILING LAW……………………………………………...      26

X.     CONCLUSION…………………………………………………………..      30

## TABLE OF AUTHORITIES

*Cain v. New York State Bd. of Elections*,
630 F. Supp. 221 (E.D.N.Y. 1986)……………………………………… 22
*Capitol Records, LLC v. VideoEgg, Inc.*,
611 F. Supp. 2d 349 (S.D.N.Y. 2009)…………………………………… 15
*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
90 F. Supp. 3d 97  (S.D.N.Y. 2015)………………………….................. 15
*Costello Publ'g Co. v. Rotelle*,
670 F.2d 1035  (D.C. Cir. 1981)……………………………………. 18
*Daimler AG v. Bauman, U.S.*,
134 S. Ct. 746 (2014)…………………………………………………….. 3,16
*Day Village Ltd. Partnership v. CW Capital L.L.C.*,
2006 WL 2572118 (S.D.N.Y.  2006)…………………………………… 20
*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)……………………………………………. 20
*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*,
829 F. Supp. 62 (S.D.N.Y. 1993)……………………………………… 18
*Ehrenfeld v. Bin Mahfouz,*
851 N.Y.S.2d 381 (N.Y. 2007)………………………………………… 12,13
*Farrior v. George Weston Bakeries Distribution, Inc.*,
No. 08-CV-2705, 2009 WL 113774 (E.D.N.Y. 2009)…………………… 23
*Flowserve Corp. v. BMCE*,
2006 WL 2927176 (S.D.N.Y. 2006)……………………………….…… 19
*Honda Assocs. v. Nozawa Trading, Inc.*,
374 F. Supp. 886 (S.D.N.Y. 1974)………………………………….. 14
*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003)…………………………………………… 12
*Lancaster v Colonial Motor Freight Line, Inc.*,
581 N.Y.S.2d 283 (1st Dept. 1992)…………………………………… 15
*Lewis v. Madej*,
2015 WL 6442255 (S.D.N.Y. 2015)……………………………….. 12
*Lipton v. The Nature Co.*,
781 F. Supp. 1032 (S.D.N.Y. 1992)…………………………………… 18
*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976)…………………………………………… 26
*Medien Patent Verwaltung AG v. Warner Bros. Entm't*,
749 F. Supp. 2d 188  (S.D.N.Y. 2010)………………………………… 24
*Matera v. Native Eyewear, Inc.*,
355 F. Supp. 2d 680, 685 (E.D.N.Y. 2005)…………………….............. 13,16,19
*Meyer v. Bd. of Regents*,
2014 U.S. Dist. LEXIS 68510 (S.D.N.Y. 2014)………………………….. 16
*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006)……………………………… 21
*New York Marine and General Ins. Co. v. Lafarge North Am.*,

599 F.3d 102 (2d Cir. 2010)………………………………………………… 19
*Orb Factory, Ltd. v. Design Science Toys, Ltd.*,
6 F. Supp. 2d 203 (S.D.N.Y. 1998)………………………………………… 19
*Oubre v. Clinical Supplies Mgmt.*,
2005 WL 3077654 (S.D.N.Y. 2005)……………………………………….. 24
*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996)………………………………………………….. 19
*Royalty Network* Inc. v. Dishant.com, LLC,
638 F. Supp. 2d 410 (S.D.N.Y. 2009)……………………………………… 14
*Royal & Sunalliance v. British Airways*,
167 F. Supp. 2d 573 (S.D.N.Y. 2001)……………………………………… 21
*Sephora USA, Inc. v. Gilbert Express, Inc. et al.*,
06-cv-04121-RWS (S.D.N.Y.)……………………………………………… 13,17
*Wells v. Universal Pictures Co.*,
166 F.2d 690, 692 (2d Cir. 1948)…………………………………………… 18
*WesternGeco L.L.C. v. ION Geophysical Corp.*,
837 F.3d 1358 (Fed. Cir. 2016)…………………………………………... 25
*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88, 95 (2d Cir. 2000)……………………………………………… 15
*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)………………………………………………… 12
*Zangiacomi v. Saunders*,
714 F. Supp. 658 (S.D.N.Y. 1989)…………………………………………. 21

**Statutes**

28 U.S.C. § 1400(a)……………………………………………………….. 3,18
28 U.S.C. § 1404(a)……………………………………………………….. 4,23,24
Federal Rule of Civil Procedure 12 (b)(2)………………………………… 1,12,13
Federal Rule of Civil Procedure 12(b)(3)…………………………………. 1,4,16
Federal Rule of Civil Procedure 12(b)(7)…………………………………. 1,4
Federal Rule of Civil Procedure 12(b)(f)………………………………….. 1
Federal Rule of Civil Procedure 12(b)(f)………………………………….. 1
Federal Rule of Civil Procedure 19(a)(1)(A)…..…………………………. 19
Federal Rule of Civil Procedure 20(a)……………………………………. 20
New York Civil Practice Law and Rules § 302(a)(1)……………………… 1,2,12
New York Civil Practice Law and Rules § 302(a)(2)……………………... 1,2,14
New York Civil Practice Law and Rules § 302(a)(3)……………………... 1,3,15
New York Civil Practice Law and Rules § 302(a)(3)……………………... 14
New York Civil Practice Law and Rules § 301…………………………… 1,3,16

**Treatises**

7 Charles Alan Wright et al., Federal Practice and Procedure
§ 1614 (2d ed. 1986)…………………………….…………………………..... 18

Plaintiff respectfully submits this memorandum of law and the annexed declarations of Richard Garbarini, Esq., John Emanuele, Richard Cupolo,  and the exhibits annexed to each, in opposition to defendant's motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12 ("Rule 12") Sections 12(b)(3), 12(b)(3), 12(b)(7), and 12(b)(f).

## I.    PRELIMINARY STATEMENT

While defendant's memorandum of law is replete with misleading facts, those facts, and all others, are unsupported by a declaration or affidavit as required by law.  Defendant's failure to include a declaration alone requires denial, and is incurable on reply.

**Jurisdiction**:  This Court has both specific and general jurisdiction over defendant pursuant to CPLR § 302(a)(1), CPLR § 302(a)(2), CPLR § 302(a)(3), and CPLR § 301. Applicable to each of these statutory provisions are the undisputed facts that: (i) plaintiff is the owner of, inter alia, five copyrighted recordings titled *Signaling Through the Flame, Escapist, Call, Age of Wonder*, and *DEA* (the "Copyrighted Recordings"); (ii) defendant created at least one hundred and thirty-five (135) advertisements featuring spokeswoman Kat Von D, at least six (6) of which illegally synchronized plaintiff's Copyrighted Recordings (the six are the "SEPHORA Advertisements"); and (iii) defendant distributed the SEPHORA Advertisements through in-store touch-screen kiosks at stores in this Judicial District, the SEPHORA website, and YouTube (with links to the website).

**CPLR § 302(a)(1)** confers jurisdiction over any entity that transacts any business within the state or contracts anywhere to supply goods or services in the state.  CPLR § 302(a)(1) is a "single act statute", and proof of one transaction in New York with a nexus to the infringement is sufficient to invoke jurisdiction, so long as the defendant's activities were purposeful.

There were tens of thousands of SEPHORA purchases made in New York, both ecommerce and through their fifty-five brick and mortar stores (thirty one in New York City), which are directly related to the SEPHORA Advertisements. This means SEPHORA conducts business in New York. Plaintiff's claims arise out of the synchronization and distribution of the SEPHORA Advertisement through in-store kiosks in this Judicial District, as well as the SEPHORA website, and YouTube. Plaintiff's claims arise out of its business activities in New York. Accordingly, this Court has jurisdiction pursuant to CPLR § 302(a)(1).

Further, this Court has jurisdiction pursuant to CPLR 302 § (a)(1) because the SEPHORA Advertisements were uploaded to an "interactive website", found at <www.sephora.com>, (the S. Website) which transmits goods to this State. Where an "interactive website" is not only available but also purposefully directs activity into a forum state--for example, by making sales of goods or services to New York residents--those activities are sufficient to trigger jurisdiction under sections 302(a)(1). Plaintiff has alleged three specific transactions from the website that are directly related to the SEPHORA Advertisements. Each transaction confers jurisdiction under CPLR § 302(a)(1).

**CPLR § 302(a)(2)** confers jurisdiction due to the offering for sale of goods in-State which share a nexus with the infringement satisfies CPLR § 302(a)(2), provided the infringer was physically present in the State. SEPHORA is in the business of selling goods related to the SEPHORA Advertisements. Those goods were offered in thirty-one SEPHORA stores in New York City, this is the sale of goods with a nexus to the infringement. By uploading and distributing the SEPHORA Advertisements through in-store kiosks in this Judicial District, SEPHORA committed a tort within the state. Both elements of CPLR § 302(a)(1) are satisfied and jurisdiction is conferred to this Court.

2

**CPLR § 302(a)(3)** is applicable when the defendant commits a tortious act outside the state which resulted in an in-state injury.  The defendant must also be one who regularly transacts business or derives substantial revenue from goods used or consumed or services rendered, in the state. CPLR § 302(a)(3) (i)-(ii).

Defendant admits it illegally synchronized two of plaintiff's Copyrighted Works to two of the SEPHORA Advertisements in California.[1]  Plaintiff was injured in Queens (where plaintiff resides), and SEPHORA regularly transacts business or derives substantial revenue from goods or services rendered in New York, e.g., SEPHORA has at all times maintained 35 brick-and-mortar stores in New York City and fifty-one in New York State, and 9% of its U.S. revenue is generated from New York.  This satisfies the elements set forth in CPLR § 302(a)(3) and subsection (i).

**CPLR § 301** confers jurisdiction over a foreign corporation if it is present or "doing business" in the state.  As stated above, SEPHORA is both present and doing business in New York.  SEPHORA's business activities in the State are sufficiently continuous for jurisdiction under CPLR § 301.  SEPHORA is "at home" in New York for due process purposes as set forth in *Daimler AG v. Bauman, U.S.*, 134 S. Ct. 746 (2014).  SEPHORA: (i) maintains a corporate headquarters in New York City; (ii) owns and/or leases and operates thirty-three SEPHORA stores in New York City and fifty-two in New York State; (iii) is registered with the New York Secretary of State to do business in New York, and (iv) admitted it is doing business in New York and subject to jurisdiction in New York in another matter.

---

[1] It appears the only defense defendant has to the five recordings it has infringed is a purported invoice for "three Signature Track cues."  This invoice obviously relates to Signature Track recordings not YESH recordings, but it also covers three not five "cues".

3

SEPHORA also generates 1.4 billion dollars in revenue in the United States, almost 31% of which comes from ecommerce.  Almost 9% of SEPHORA's U.S. sales come from New York.  That means approximately $126,000,000 in total revenue, which includes $11,340,000 in ecommerce, is generated from New York.

Based on the forgoing, SEPHORA is "At Home" in New York for due process purposes, and general jurisdiction is conferred pursuant to CPLR § 301.

**Rule 12(b)(3)**, in an action for copyright infringement, is controlled by 28 U.S.C. § 1400(a), which states that an action may be brought where the defendant or his agent resides or may be found.  Defendant has a designated agent in New York, located in Albany.  Defendant "may be found" in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive.  Consequently, this Court's resolution of the jurisdictional issues moots this claim.

**Rule 12(b)(7)** does not apply to copyright cases because all liable parties are joint tortfeasors are jointly and severally liable.  The victim may sue as few of the alleged wrongdoers as he chooses; those left out of the lawsuit are not indispensable parties.  This Court may provide complete relief without having to address any other party.  Moreover, the parties named by defendant are wholly irrelevant, and named just to complicate this matter.

**28 U.S.C. § 1404(a)**: Defendant's motion pursuant to Rule 1404(a) fails in all respects.  A party requesting transfer of an action under 28 U.S.C. § 1404(a) has the burden of "making out a strong case for transfer" by clear and convincing evidence.  *New York Marine and General Ins. Co. v. Lafarge North Am.*, 599 F.3d 102, 114 (2d Cir. 2010) (affirming denial of transfer).  First, SEPHORA failed to submit a sworn statement, which is an incurable defect.  Second, SEPHORA failed to meet its burden.

4

**Plaintiff YESH's choice of forum weighs against transfer**.  YESH's choice of this forum was based on legitimate reasons, not to obtain any improper tactical advantage.  This choice is entitled to a full measure of deference.

**The convenience of witnesses weighs against transfer**.  Defendant failed to include a sworn statement that specifically identifies witnesses, their testimony, and their willingness to testify as required by Second Circuit precedent.  This failure is not curable by any reply submission.  YESH, however, has submitted a sworn statement identifing non-party witnesses located in New York, who would be inconvenienced by litigation in San Francisco.

**The convenience of parties weighs against transfer**.  Defendant has filed or defended dozens of actions in New York.  This is a convenient forum, particularly in light of the fact that the only two non-party witnesses plaintiff expects to call live in New York.

**Relative means of the parties weighs against transfer**.  SEPHORA is a major corporation with four billion in annual revenue and ample means to defend this action. YESH's only business is to license the recordings of The American Dollar, which is a modest endeavor.  The expense of litigating in San Francisco is as a barrier to suit.

**Compulsion of witnesses weighs against transfer**.  SEPHORA failed to identify any witnesses they anticipate seeking to compel to attend trial and whether the witnesses are amenable to testifying.  YESH anticipates compelling the testimony of two non-party witnesses, both within the compulsory power of this Court.

**Locus of operative facts weighs aganst transfer**.  New York is the location of the copyright owner and situs of injury, the location of the in-store kiosks, and very well may be the location of the creation of the SEPHORA Advertisements.

**Location of documents is neutral**.  SEPHORA make no showing that there would be any substantial burden relating to the production of documents in New York; moreover, this factor is entitled to little weight in the modern age.

**Governing law weighs against transfer**: SEPHORA claims it will make counterclaims governed by California law without explaining why California law would somehow be applied by this Court, or why contract complains would apply when there is no contract. Regardless, this element is afforded little weight as this Court is competent to apply California law to these hypothetical counter-claims.

Balancing the Section 1404(a) factors on the record before the Court, SEPHORA has

failed to establish a clear and convincing case for upsetting plaintiff YESH's choice of forum.

5

**Rule 12(f)**: Defendant's motion to strike pursuant to Rule 12(f) fails in all respects. Every recital identified by defendant is pertinent, and supported by admissible evidence. Consequently, each is well-plead and cannot be struck as purportedly salacious or irrelevant.

## II.      PROCEDURAL HISTORY

The original Complaint in this matter was filed on September 2, 2016. (Dkt. No. 1).  The First Amended Complaint was filed three days later on September 5, 2016. (Dkt. No. 7) in order to correct a party name.  When an additional work was identified as being infringed, plaintiff filed the Second Amended Complaint on October 4, 2016. (Dkt. No. 10).  Two days later, an additional recording was identified as being infringed, and a motion to file the Third Amended Complaint was made. (Dkt. No. 11). The Third Amended Complaint was filed on November 29, 2016. (Dkt. No. 17).  Defendant did not answer, or otherwise move, until February 13, 2017, when it filed the within motion to dismiss pursuant to 12(b)(2), 12(b)(3), 12(b)(7), and 12(f).

## III.      FACTS

Defendant does not dispute that it created and distributed the SEPHORA Advertisements, or that it illegally synchronized and distributed at least two of the Copyrighted Compositions to those advertisements. TAC at ¶¶ 18-26,47, Ex. 5; Cupolo Decl. at ¶ 2; Emanuele Decl at ¶ 8. Nor is it disputed the SEPHORA Advertisements were distributed within this Judicial District, and otherwise directed to this Judicial District through, inter alia, defendant's in-store kiosks, website, and YouTube. TAC at ¶¶ 18-23,31; Cupolo Decl. at ¶ 3.  With respect to the in-store touch screen kiosks were rolled out in 2001. TAC at ¶ 31; Cupolo Decl. at Ex. No. 2.  Those kiosks were rolled out across the New York City in 2012. Cupolo Decl. at Ex. No. 1.  The SEPHORA Advertisements are "video tutorials" likely created in early 2014 and played on the in-store touch-screens. Cupolo Decl. at 6.

6

**Defendant SEPHORA is "At Home" in New York:** SEPHORA maintains a corporate headquarters in New York City. See Garbarini Decl. Ex. No. 1.  SEPHORA, in legal filings, represented New York was its U.S. headquarters. See Garbarini Decl. Ex. No. 2.  SEPHORA is also: (i) registered to do business in New York; (ii) admitted it regularly conducts business in New York and is subject to jurisdiction in New York, see *Sephora USA, Inc. v. Gilbert Express, Inc. et al.*, 06-cv-04121-RWS (S.D.N.Y.), Dkt. No. 1, ¶ 2, (iii) has at all times maintained fifty-five brick-and-mortar stores in New York State, (v) generated a significant amount of revenue from New York, and (vi) filed and/or defended dozens of legal actions in New York without contesting jurisdiction. See Garbarini Decl. Ex. Nos. 3,4,5,6.

The SEPHORA Advertisements have been viewed millions of times. See Cupolo Decl. at ¶ 7, Ex. No. 3.  That's a substantial amount of views, and each video was posted to Sephora.com, and YouTube.com with a link to Sephora.com. See Cupolo Decl. at ¶ 9.  Logic dictates SEPHORA would not have created 135 tutorials if they did not generate significant revenue.

While there have been tens of thousands of sales in New York directly related to the products offered in the SEPHORA Advertisements, plaintiff has identified three specific internet sales in New York City generated by the SEPHORA Advertisements. See Cupolo Decl. at ¶¶ 10-25.

Further, defendant operates a website found at <www.sephora.com.> (the "S. Website"). Cupolo Decl. at ¶ 28.  The S. Website is highly interactive, and users can purchase products directly from the S. Website. Cupolo Decl. at ¶ 29.  Users from New York represent nearly 9% of the of the approximate $434,000,000 in SEPHORA's U.S. ecommerce sales. Cupolo Decl. at ¶ 26.

Defendant contracted with JC Penny in New York to put hundreds of SEPHORA stores

7

in JC Penny stores including the JC Penny stores located in the Queens Mall and Manhattan Mall. Cupolo Decl. at Ex. 4.  Defendant also contracted with fifty-five building owners in New York to lease space. Cupolo Decl. at ¶ 36.59, Ex. 5.  These are expensive long-term leases for large spaces., e.g., (i) 5 Times Square which has 13,000 square-feet at an annual rent of 4.5 million dollars; (ii) 90-15 Queens Blvd., which has 21,000 square-feet at an annual rent of at 6.5 million, (iv) 11,300 square-feet on 6th Ave. for 10 years; (iv) 11,300 square-feet at 112 West 34th St.; (vi) 8,300 square-feet on Jarolemon St., blocks from this Court House; (vii) 7,000 square-feet at 750 Lexington Ave, and even (viii) the second level of Quincy Market in Boston, leased from New York-based leaseholder, Ashkenazy Acquisitions Corp. Cupolo Decl. at ¶ 31, Ex 5.

**The Purported Invoice:** Defendant started synchronizing and distributing at least three of the SEPHORA Advertisements in early 2014. Garbarini Decl. Ex. 14.  Because at least three of the SEPHORA Advertisements were released before the invoice, there can be no claim the three YESH recordings synchronized to the videos have been infringed, making the purported invoice irrelevant. TAC at ¶ 24.

When plaintiff inquired into the existence of a license via email to defendant dated June 27, 2016, it received an acknowledgment of receipt. TAC at ¶¶ 57,58,61, Exs. Nos. 7-8. Defendant did not, however, respond. TAC at ¶ 59.  Defendant also ignored requests from plaintiff's counsel that a license be produced dated September 3, 2016 and September 25, 2016. TAC at ¶ 60, Garbarini Decl. at ¶ 16, Ex. No. 16.  Defendant refused to respond. TAC at ¶ 61.

On September 23, 2016, plaintiff received a call from Adam Malka, co-owner of Signature Tracks ("Signature"), a music licensing company, claiming Signature licensed a single song to Sephora in 2015 for $400. See TAC at ¶¶ 62,68; Emanuele Decl. at ¶ 8; Garbarini Decl. Exs. Nos. 8-9.  This was a bizarre phone call for many reasons, one because Signature had no

authority to license plaintiff's recordings. TAC at ¶¶ 62,63,74-82, Ex. No. 9; Emanuele Decl. at ¶ 11.  In September 2014, plaintiff sent Signature a proposed representation agreement which was rejected by Signature. TAC at ¶ 64, Ex. 10.  Signature did send plaintiff its proposed representative contract in May 2015, which was rejected by plaintiff. TAC at ¶ 65,116, Ex. No. 10; Emanuele Decl. at ¶ 4-5.  Having failed to reach an agreement, plaintiff made it clear that Signature may not license its recordings. See TAC at ¶ 67, Ex. No. 12.

On September 23, 2016, Malka was contacted by counsel for plaintiff by email stating:

> I represent Yesh Music. LLC/The American Dollar.  I was informed that you represented you gave a license to Sephora in 2015.  Please send a copy of that license.  Also, why was my client not paid for a license from 2015?. Garbarini Decl. at Ex. No. 8.

Malka did not respond. TAC at ¶ 22; Garbarini Decl. at ¶ 17.  On September 26, 2016, counsel contacted Malka again by email stating:

> I represent Yesh Musc. LLC/The American Dollar.  I was informed that you represented you gave a license to Sephora in 2015.  Please send a copy of that license.  Also, why was my client not paid for a license from 2015? Garbarini Decl. at Ex. No. 9.

On September 27, 2016 plaintiff's counsel was contacted by Malka who completely changed his story. TAC at ¶ 73.  Malka now claimed there was one video, and the new license fee was for $1,200 ($400 times three). TAC at ¶ 73, Ex. No. 15.  On September 29, 2016, the story changed again when defendant produced the purported invoice. TAC at ¶ 48, Ex. No. 5.  The purported invoice was not to SEPHORA, as previously represented, but to an unknown Jonathan Sandler. TAC at ¶ 47, Ex. No. 5.  The invoice also moved the date to October 29, 2014 from 2015, and covered "three Signature Track cues", which just happened to match the number of infringements alleged at that time. TAC at ¶ 47, Ex. No. 5.

Plaintiff was never informed by Malka that *Signaling Through the Flame, Escapist, Call, Age of Wonder*, and *DEA* were licensed to SEPHORA, or anyone. See Def. Mem of Law at pgs. 1,4. Emanuele Decl. at ¶ 6; Garbarini Decl. at ¶ 25. Malka never informed plaintiff any one of the subject Copyrighted Recordings was licensed. Emanuele Decl. at ¶ 7; Garbarini Decl. at ¶ 25. Defendant knows full-well it disclosed a purported invoice for "three Signature Tracks cues",[2] not five YESH recordings. TAC at ¶ Ex. 5. The purported invoice also covers only "SIGNATURE TRACKS ONLINE MUSIC LICENSE" which is not a master use and synchronization license.

Prior to entering into the license, plaintiff would have been contacted to approve it. TAC at ¶ 82-84; Cupolo Decl. at ¶ 37. Plaintiff makes a significant part of its living from licensing their 125 recordings. Cupolo Decl. at ¶ 38. If another client in the same space had licensed one of the subject recordings, SEPHORA'S use would have been a breach of that license. Cupolo Decl. at ¶ 39. For example, if Macys, Lord and Taylor, Ulta, Harmon, Space NK, Blueercury, etc., licensed *Escapist* for a commercial, there can't be another national commercial for SEPHORA using the same recording at the same time. Cupolo Decl. at ¶ 40. Further, SEPHORA's six (6) national commercials, of unlimited duration, means plaintiff lost the right to ever use those recordings in that retail space again, which is a significant loss. Cupolo Decl. at ¶¶ 38-42. Had plaintiff been contacted it would have demanded at least $60-70,000. Cupolo Decl. at ¶ 42. Plaintiff was never contacted or paid anything. Cupolo Decl. at ¶ 43.

By email dated September 29, 2016, counsel for plaintiff wrote to Malka as follows:

> First, kindly let me know if you produced the purported invoice to Sephora's attorney or to Mr. Jonathan Sandler. I would also like a copy of the

---

[2] Signature is run by three musicians, Russel Howard, David Lasman and Adam Malka. Cupolo Decl. at ¶ 56. Only 5,798 of the 25,654 recordings in the Signature music library are non-Signature Track recordings. Cupolo Decl. at Ex. 12. "Signature Tracks cues" refers to recordings created by Signature Tracks.

communications asking for the license/invoice, and those producing the purported license/invoice.

Garbarini Decl. Ex. No. 12.  Signature refused to respond.  To the date of this memorandum of law, plaintiff has no way of knowing if the purported invoice is authentic.

There is significant evidence indicating the invoice is not authentic.  Signature failed to reference, or in any way acknowledge, any of the SEPHORA Advertisements on its website, Facebook, or on Twitter. TAC at ¶¶ 101-104; Cupolo Decl. at. ¶¶ 44-45.  An impossibility in light of the fact that Signature posts everything it licenses works for. TAC at ¶ 100; Cupolo Decl. at ¶ 45.  Similarly, Sandler also posted all of his work to his website. TAC at ¶¶ 98-99, Ex. 22; Cupolo Decl. at ¶ 46-48.  None of the SEPHORA Advertisements was posted by Mr. Sandler to his website, Facebook, or Twitter. TAC at ¶¶ 98-99; Cupolo Decl. at ¶¶ 46-48.  Sandler didn't even "like" any of the SEPHORA Advertisements on YouTube. Cupolo Decl. at ¶ 48, Ex. 7.

The forgoing is significant evidence demonstrating neither Sandler nor Signature were ever involved in the creation of the SEPHORA Advertisements, in any manner. TAC at ¶¶ 97-110; Cupolo Decl. at ¶ 50.  Neither is a necessary witnesses, however, plaintiff is prepared to depose both, as necessary, at mutually convenient locations and times, and does not anticipate any need to compel the attendance of distant witness at trial. Garbarini Decl. at ¶ 29.

**Evidence.**

Plaintiff possesses numerous video advertisements, abstracted from other websites, and additional documents all of which are in this Judicial District. See Cupolo Decl at ¶ 51.  Plaintiff has also declared it expects only a modest production of additional discovery by defendant. See Garbarini Decl. at ¶ 32.

**Witnesses.** Plaintiff has identified two individuals within 100 miles of this Court that it expects to compel to testify; namely, Patricia Lopez, current Manager of the Times Square

11

Sephora, and Courtney Tichman, former National Brand Manager for Sephora. Garbarini Decl. at ¶ 30.  These non-party witnesses are expected to testify to the playing of the SEPHORA Advertisements on in-store kiosks, and the volume of sales of products identified in the SEPHORA Advertisements. Garbarini Decl. at ¶ 31.

**Means.** Plaintiff is comprised of two musicians from Queens, with very limited means. Cupolo Decl. at ¶ 57.  SEPHORA generates four billion dollars in revenue a year. Garbarini Decl. Ex. 12.  It would be a significant burden for plaintiff's two members to litigate this matter in San Francisco. Cupolo Decl. at ¶ 53.  Contrarily, SEPHORA routinely files matters, or defends matters in New York. Garbarini Decl. at ¶ 15, Ex. 7.

## IV.    GENERAL LEGAL STANDARD

Upon motion, the court is required to dismiss an action against any defendant over whom it lacks personal jurisdiction. See Fed. R. Civ. P. 12(b)(2).  Upon such motion, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  "[A] plaintiff may demonstrate "through [its] own affidavits and supporting materials, containing [a] [good faith] averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001)).  If jurisdiction is found courts must determine ". . . whether personal jurisdiction comports with due process protections established under the Constitution." *Lewis v. Madej*, 2015 WL 6442255, at *3 (S.D.N.Y. 2015).

### a.  This Court Has Jurisdiction Pursuant To CPLR § 301(a)(1).

"Under CPLR 302 (a)(1), a court may exercise personal jurisdiction over any non-domiciliary, who in person or through an agent . . . transacts any business within the state if the cause of action asserted arises out of that transaction." *Ehrenfeld v. Bin Mahfouz,* 851 N.Y.S.2d

381, 385 (N.Y. 2007). "The overriding criterion necessary to establish a transaction of business is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York].'" *Id.* (quoting *McKee Elec. Co. v Rauland-Borg, Corp.*, 20 NY2d 377, 382 (1967)). Further, a non-domiciliary's long-standing and continued contractual relationships with New York-based businesses weighs significantly in favor of finding purposeful availment. See *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 685 (E.D.N.Y. 2005).

At bar, the tort was committed in this state via the uploading and distribution of the SEPHORA Advertisements through kiosks in this Judicial District. As for continuous and systematic contacts: SEPHORA has at all times relevant maintained a corporate headquarters in New York City, see Garbarini Decl. Ex. No. 1, and represented in legal filings that New York was its U.S. headquarters. See Garbarini Decl. Ex. No. 2. SEPHORA is also: (i) registered to do business in New York; (ii) admitted it regularly conducts business in New York and is subject to jurisdiction in New York, see *Sephora USA, Inc. v. Gilbert Express, Inc. et al.*, 06-cv-04121-RWS (S.D.N.Y.), Dkt. No. 1, ¶ 2; (iii) has at all times maintained fifty-one brick-and-mortar stores in New York State, (v) generated a significant amount of revenue from New York, and (vi) filed and/or defended dozens of legal actions in New York without contesting jurisdiction. See Garbarini Decl. Exs. Nos. 4,5,6,17; Cupolo at ¶ 28.

CPLR § 302 (a)(1) is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted. Being that this matter involves advertisements posted to, inter alia, SEPHORA's website, jurisdiction under CPLR § 302(a)(1) can be based on a single sale

over the internet to New York. *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009).

In this case, the S. Website is highly interactive. Cupolo Decl. at ¶ 27.  Even the YouTube posts contained a link to purchase the products shown. Cupolo Decl. at ¶ 9.  Users from New York represent nearly 9% of the over estimated $600,000,000 in yearly ecommerce sales. See Cupolo Decl. at ¶ 27.  Plaintiff has identified three specific individuals, located in New York, who watched the subject Kat Von D advertisement, and then purchased the advertised product over the internet. Cupolo Decl. at ¶¶ 11-25.

The defendant's activities here were purposeful and there is a substantial relationship between the three identified transactions and the claim asserted.  Thus, jurisdiction under CPLR 302(a)(1) is conferred.

**b.  This Court Has Jurisdiction Pursuant To CPLR § 301(a)(2).**

"Section 302(a)(2) requires no specified level of activity within the state, but only that the plaintiff suffer some damage as a result of a tortious act committed in New York.".  *Honda Assocs. v. Nozawa Trading, Inc*., 374 F. Supp. 886, 889 (S.D.N.Y. 1974).

At the very least, plaintiff was damaged by the loss of $60-70,000 in licensing revenue from SEPHORA. Cupolo Decl. at ¶ 42.  The SEPHORA Advertisements were uploaded and played on touch-screen kiosks in the SEPHORA stores located in this Judicial District. Cupolo Decl. at ¶ 3-6, Exs 1-2.  The uploading and distribution over in-store kiosks constitutes an infringement (or tort) committed within the state.

Defendant was present in the State when it committed the tort via its fifty-five stores containing the kiosks conferring jurisdiction under CPLR 302(a)(2).

14

**c. This Court Has Jurisdiction Pursuant To CPLR § 301(a)(3).**

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary who commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii)  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. CPLR § 301(a)(3).

First, SEPHORA claims it is located in California, and committed the alleged copyright infringement there. Def. Mem. of Law at pg. 4; see *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106 (S.D.N.Y. 2015) ("Where an internet site displays allegedly infringing marks, the tort is deemed to be committed where the website is created and/or maintained.").  Secondly, the injury occurred in New York where YESH, the alleged owner of the copyrights, is a resident. *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 353 (S.D.N.Y. 2009).

SEPHORA has at all times maintained 35 brick-and-mortar stores in New York City and fifty-five stores in New York State, Gabarini Decl. at Ex. 17, and generated a significant amount of revenue from New York City. Cupolo Decl. at ¶ 54,59.  Accordingly, subsection (i) of CPLR 302(a)(3) is satisfied.

**d. This Court Has Jurisdiction Pursuant To CPLR § 302(a)(4).**

CPLR § 302 (a)(4) conveys jurisdiction over defendant's that "4.  owns, uses or possesses any real property situated within the state."  In order to assert jurisdiction under CPLR 302(a)(4), a plaintiff must demonstrate a relationship between the defendants' real property and the plaintiff's causes of action. See *Lancaster v Colonial Motor Freight Line, Inc*., 581 N.Y.S.2d

15

283 (1st Dept. 1992), (citing *Aluminal Industries, Inc. v Newtown Commercial Associates*, 89 F.R.D. 326 (S.D.N.Y. 1980)).

As mentioned above, SEPHORA owns or uses a significant amount of property in the form of fifty-five stores in the State. The claim arises from that property as the tort took place there. As a direct result, jurisdiction is conferred under CPLR § 302(a)(4).

**e.  This Court Has Jurisdiction Pursuant To CPLR § 301.**

This Court may exercise general jurisdiction over SEPHORA pursuant to CPLR § 301 which ". . . confers general personal jurisdiction provided plaintiff shows either that the defendant was 'present' or 'doing business' in New York." *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 95 (2d Cir. 2000). A defendant "is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id*.

"For general jurisdiction over an individual to comport with due process, Defendant[] must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction. Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." *Meyer v. Bd. of Regents, 2014 U.S. Dist. LEXIS 68510, at \*4 (S.D.N.Y. 2014)* (citing *Daimler AG*, 134 S. Ct. at 761).

As an initial matter, defendant was served in New York via its designated agent the Corporation Service Company located in Albany, New York. See Garbarini Decl. at Ex. No. 3, and consented to the jurisdiction of New York in *Sephora USA, Inc. v. Gilbert Express, Inc. et al*., 06-cv-04121-RWS (S.D.N.Y.). See Garbarini Decl. at Ex. 4.

16

Further, as mentioned supra., SEPHORA maintains a headquarters in Manhattan and represented in legal filings, its New York headquarters was its designated U.S. headquarters. See Garbarini Decl. at Exs. 1 and 2. SEPHORA also: (i) maintained 55 brick-and-mortar stores in New York, (ii) generated a significant amount of revenue from New York, and (iii) filed and or defended dozens of legal actions in New York without contesting jurisdiction. Garbarini Decl. at Exs. Nos. 4,17. Based on the forgoing, SEPHORA is "At Home" in New York, satisfying all due process concerns. This Court has general jurisdiction is conferred pursuant to CPLR § 301.

As discussed above, defendant is subject to jurisdiction in this Court pursuant to CPLR § 301; CPLR § 302(a)(1), CPLR § 302(a)(2), CPLR § 302(a)(4), and CPLR § 302(a)(3)(i). Jurisdiction under any of one of these statutes is sufficient to establish proper venue. As such, plaintiff respectfully requests this Court reject this claim accordingly.

## V.   ILLEGAL FORUM SHOPPING.

Additionally, based on the fact that defendant has routinely consented to the jurisdiction of New York, this motion constitutes illegal forum shopping. SEPHORA has filed or defended dozens of matters in New York without raising a jurisdictional argument. Garbarini Decl. at Ex. 4, ¶ 36. In fact, in *Sephora USA, Inc. v. Gilbert Express, Inc. et al.*, 06-cv-04121-RWS (S.D.N.Y.), an action SEPHORA filed against foreign corporations in New York, SEPHORA specifically admitted it is subject to the jurisdiction of New York courts. Garbarini Decl. at Ex. 4. Now, for the first time, SEPHORA is claiming it is not subject to jurisdiction. A party cannot pick and choose when it is subject to jurisdiction. This is the type of litigation tactic the crosses over to illegal forum shopping, and should be dismissed accordingly.

17

## VI.    DEFENDANT'S MOTION PURSUANT TO RULE (12)(b)(3) (VENUE) IS MOOTED BY 28 U.S.C. § 1400(a).

"In an action for copyright infringement, venue is controlled by 28 U.S.C. § 1400(a), which states that an action" **may be brought where the defendant or his agent resides or may be found**." *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993)(emphasis added).  Defendant designated as its agent in New York the Corporation Service Company, 80 State Street, Albany, New York. Garbarini Decl. at Ex. No. 3. This confers jurisdiction in New York under 1400(a).

". . . [A] defendant 'may be found' in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive." *Id.*; see also *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992).  It is patently obvious this Court has jurisdiction under CPLR §§ 301 and 302, therefore defendant's motion under 12(b)(3) is mooted.

## VII.    DEFENDANT'S MOTION PURSUANT TO RULE 26(F) IGNORES SEVENTY YEARS OF CASE-LAW.

"Courts have long held [that] in . . . copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. . ..  Since joint tortfeasors are jointly and severally liable, the victim . . . may sue . . . as few of the alleged wrongdoers as he chooses; those left out of the lawsuit . . . are not indispensable parties." *Costello Publ'g Co. v. Rotelle*, 216 U.S. App. D.C. 216, 670 F.2d 1035, 1043 (D.C. Cir. 1981); *Wells v. Universal Pictures Co.*, 166 F.2d 690, 692 (2d Cir. 1948); 7 Charles Alan Wright et al., Federal Practice and Procedure § 1614, at 225 (2d ed. 1986) ("The question of who must be joined as defendants in . . . copyright . . . suits for infringement . . . is fairly easy to answer.  A suit for [copyright] infringement may be analogized to other tort actions; all infringers are jointly and severally liable.)  Further, a party

18

named in the litigation cannot assert the interest on the absent party's behalf. See *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir. 1996).

There is significant evidence demonstrating neither Sandler nor Signature were involved with the creation of the SEPHORA Advertisements.  But that is of no moment.  This is just another frivolous claim made in direct contradiction to the well-established law in this, and every other, Circuit, holding joint-tortfeasors are not indispensable under Rule 19 because this Court can "accord complete relief among [the] existing parties." Fed. R. Civ. P. 19(a)(1)(A).

## VIII.   DEFENDANT'S APPLICATION FOR A 1404(a) TRANSFER FAILS BY LAW.

"The moving party must support its motion [under 1404(a)] with an affidavit containing detailed factual statements explaining why the motion should be granted including, among other things, the location of events giving rise to the suit, convenience of the parties and witnesses, transferee forum is more convenient." *Matera v. Native Eyewear, Inc*., 355 F. Supp. 2d 680, (E.D.N.Y. 2005);  *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006)(the movant must support its motion with a detailed factual affidavit.)  "These affidavits should include 'the potential principal witnesses expected to be called and a general statement of the substance of their testimony.'" *Id*. (citing *Modern Computer Corp. v. Ma,* 862 F. Supp. 938, 948 (E.D.N.Y. 1994)).  Without a statement identifying expected witnesses, their likely testimony, and the willingness to testify, the movants have not met their burden of showing the materiality of witnesses.  *Flowserve Corp. v. BMCE*, 2006 WL 2927176 at *3 (S.D.N.Y. 2006) (denying transfer); *Orb Factory, Ltd. v. Design Science Toys, Ltd*., 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a).

Defendant, in the within matter, failed to include a sworn statement attesting to: (i) the identity of the purported non-party witness(es); (ii) the testimony of the purported foreign witness(es); (iii) whether the purported witnesss(es) is/are willing to travel to New York; (iv) the location of events giving rise to this suit, (iv) convenience of the parties and witness(es), or (vi) the transferee forum is more convenient.  For any one of these deficiencies, defendant's Rule 1404(a) motion fails, and cannot be cured on reply.

### a.   Defendant is Prohibited From Submitting An Affidavit on Reply

It is well established that this Court will not consider a witness list and description of testimony set forth for the first time in a reply submission. See *Matera v. Native Eyewear, Inc*., 355 F. Supp. 2d 680, 682-83 (E.D.N.Y. 2005); *Day Village Ltd. Partnership v. CW Capital L.L.C*., 2006 WL 2572118 at *3 (S.D.N.Y.  2006) ("Defendant failed to include the requisite factual information in its moving papers.  While Defendant has proffered such an affidavit in its reply papers, the Court will not consider this affidavit. . .".)

Defendant should, respectfully, not be allowed to submit an affidavit or declaration on reply, and its motion under § 1404(a) must be dismissed.

### b.   Defendant's motion fails under the traditional analysis.

Section 1404(a) permits a district court to transfer a civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  In applying this provision, the court is to consider ". . . (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d

95, 106-07 (2d Cir. 2006) (internal brackets omitted).  It is settled law in this Circuit that "the party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). District courts have broad discretion in evaluating the strength of a movant's case, and ". . . notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co.*, 462 F.3d at 106.

### i.    Plaintiff's Choice of Forum weighs against transfer.

Plaintiff's choice of forum ". . . is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (citing *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995)).  To overcome the presumption in favor of plaintiff, defendant must ". . . make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there." *Zangiacomi v. Saunders*, 714 F. Supp. 658, 660 (S.D.N.Y. 1989) (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). "Where the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum." *Id*. (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 592 F. Supp. 1097, 1106 (S.D.N.Y. 1984)).

At bar, plaintiff resides in this Judicial District, and the tort occurred in this Judicial District.  Further, as discussed above, defendant is "At Home" in this district and this Judicial District is the location of all necessary witnesses, other than, possibly, defendant's witness. Garbarini Decl. at ¶ 29.  Accordingly, plaintiff's choice of forum should not be disturbed.

Defendant misleadingly cites to *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp.

21

2d 325, 327 (E.D.N.Y. 2006) for the proposition that the plaintiff's choice of forum should not be granted considerable weight. In *Neil Bros. Ltd,* the plaintiff was a British company and the defendant was a Tennessee company. The Court held the matter "had no relationship to New York." As discussed above, this Judicial District is the locus of the majority of the operative facts.

 Defendant's also cite to *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221 (E.D.N.Y. 1986) for the same proposition. In *Cain*, the two plaintiff brought two wholly unrelated claims against two defendants. The Court held:

> Cain's claims are predicated upon alleged wrongdoing by Nassau County District Attorney Denis Dillon in connection with a prosecution arising out of techniques Cain used in his state senatorial campaign. Fahy's claims, on the other hand, arise out of alleged improprieties by the New York State Board of Elections and its Commissioners concerning Fahy's attempt to obtain the Republican nomination for the 25th Congressional District. The respective claims of each of these two plaintiffs is linked only by their merger into a single complaint that asserts the plaintiffs' "disfranchisement" and seeks class treatment.

The *Cain* Court severed the unrelated claims brought by plaintiff Fahy as they related solely to issues which should have been brought in the Northern District of New York. See *Cain* at 226-27.

Plaintiff's choice of forum should be afforded significant consideration, and defendant has put forth no facts that warrant disturbing that choice.

### ii.      Convenience of the witnesses weighs against transfer.

The convenience of the witnesses is "perhaps the most important consideration of a *Section* 1404(a) motion." *Invivo Research*, 119 F. Supp. 2d at 437. "In evaluating this factor, a court must do more than merely quantitatively assess the number of witnesses who reside in or near each district; instead a 'court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'" *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 369 (citing *Herbert*

22

*Ltd. v. Elec. Arts Inc*., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)).  The movant must support its motion with a detailed factual affidavit." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006); see *Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, 2003 WL 22244587, at *4 (lack of evidence that potential witnesses would be unwilling to travel weighed against transfer).  Moreover, "[w]here deposition testimony is an available alternative to live testimony, the convenience of the non-party witness does not favor a transfer."  Lesser, 2002 WL 1792039 at *4.

Defendant failed to submit a declaration identifying any non-party witnesses.  Moreover, while defendant identified three purported witnesses in its Mem of law, it did not state what the expected testimony of each witness as well as their willingness to travel.   Plaintiff is prepared to depose these witnesses as necessary at mutually convenient locations and times, and does not anticipate any need to compel the attendance of distant witness at trial. Garbarini Decl. at ¶ 32. Conversely, plaintiff has provided a sworn statement of witnesses it expects to call and their expected testimony. Garbarini Decl. at ¶¶ 30-31.  All of plaintiff's expected witnesses are subject to the compulsory subpoena power of this Court. *Id*.  This factor weighs against transfer.

### iii.    The Relative Inconvenience of the parties weighs against transfer.

Courts find this factor to weigh in favor of transfer when the "inconvenience [to the moving party] could be completely eliminated without substantially adding to the nonmoving party's inconvenience." *Farrior v. George Weston Bakeries Distribution, Inc*., No. 08-CV-2705, 2009 WL 113774, at *6 (E.D.N.Y. 2009) (citing *Frame v. Whole Foods Market, Inc*., No. 06-CV-7058, 2007 WL 2815613, at *6 (S.D.N.Y. 2007)).  "Where the transfer would merely shift the inconvenience from one party to the other, the Court should leave the plaintiff's choice of venue undisturbed." *Farrior*, 2009 WL 113774, at *6.

SEPHORA has filed matters in both State and Federal Court in New York, and can't possibly be heard to say New York is inconvenient.  There is zero evidence put forth by defendant regarding inconvenience.  Plaintiff has submitted a sworn declaration testifying to the inconvenience of the other forum. See Cupolo Decl. at ¶¶ 52-53.  This factor weighs against transfer.

> **iv.     Location of the documents weighs against transfer.**

This factor bears little weight, as there is nothing to suggest that those documents could not be easily produced in New York. See *Medien Patent Verwaltung AG v. Warner Bros. Entm't*, 749 F. Supp. 2d 188, 192 (S.D.N.Y. 2010).  For any weight to be given to this factor, the movant must make "a detailed showing of the burden it would incur absent transfer." *Oubre v. Clinical Supplies Mgmt.*, 2005 WL 3077654 at *3 (S.D.N.Y. 2005).  Merely stating that there are documents in the transferee forum is not sufficient. *Id*.  The moving party must establish the location and importance of the documents in question. See *Falconwood Fin. Corp*., 838 F. Supp. at 841 (citing 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3853, at 425 (2d ed. 1986)).

The movants suggest that relevant documents may be located in California.  Again, this claim is not supported by a declaration or affidavit.   Nor does the movant state the location, type, relative importance, or expected expenses incurred.  Plaintiff has produced to date, attached to the Third Amended Complaint and the annexed affidavit of plaintiff's managing partner Richard Cupolo, forty separate exhibits.  In addition to these, plaintiff has declared it possess numerous video advertisements, videos abstracted from other websites, and additional documents in this Judicial District. See Cupolo Decl at ¶ 51.  Plaintiff has also declared it expects only a modest production of additional by defendant in discovery. See Garbarini Decl at

¶ 31.  Based on the forgoing, defendant has failed in its burden, but plaintiff has established New York is the most convenient jurisdiction.

### v.    Ability to compel witnesses weighs against transfer

SEPHORA fails to specifically identify any witnesses whom they would need to compel to attend trial, or their willingness to testify.  As with the convenience of witness factor, "[d]efendants relying on this factor must support the application with an affidavit including the potential principal witnesses expected to be called, a general statement of the substance of their testimony, and a sworn statement as to whether each witness is willing to testify.  *Lesser v. Camp Wildwood*, 2002 WL 1792039 at *3 (S.D.N.Y.  2002).  Failing to state whether each witness is willing to testify weighs heavily toward not transferring. See *Id*.

Again, plaintiff has identified witnesses that may be compelled to testify; namely, Patricia Lopez, current Manager of the TimesSquare Sephora, and Courtney Tichman, former National Brand Manager for Sephora. Garbarini Decl. at ¶ 29.  This factor weighs against transfer.

### vi.    Governing law is neutral.

"The 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006).

Defendant states that it may bring counterclaims for "(i) Breach of Contract under California law, (ii) Breach of California's Implied Warranty of Good Faith and Fair Dealing, and (iii) violation of California's statute prohibiting Unfair Business Practices". Def. Mem. of Law at pg. 16.  The second two counter-claims would be barred in New York by law.  Further, defendant cannot bring the first two because they require a contract.  Finally, the Unfair Business

Practice claim requires: "(1) the consumer injury must be substantial". Obviously, defendant cannot allege a substantial consumer injury. This factor is neutral.

### vii.      Relative Means of the Parties Weighs Against Transfer.

Plaintiff is comprised of two musicians from Queens, with very limited means. Cupolo Decl. at ¶ 57. SEPHORA generates four billion dollars in revenue a year. Cupolo Decl. at ¶ 59. It would be a significant expense for plaintiff's two members to litigate this matter in San Francisco. Contrarily, SEPHORA routinely files matters, or defends matters in New York. This factor weighs in favor of not-transferring.

Defendant's failure to submit a declaration in support, defendant's failure to represent that the purported witnesses are unwilling to travel, defendant's failure to state the expected testimony, requires denial of defendants 1404(a) motion, however, under a traditional analysis, plaintiff's showing clearly warrants dismissal of defendant's motion.

### IX.      DEFENDANT'S RULE 12(f) MOTION WOEFULLY FAILS TO COMPLY WITH PREVAILING LAW.

"In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citing *Gleason v. Chain Service Restaurant*, 300 F. Supp. 1241 (S.D.N.Y. 1969), aff'd, 422 F.2d 342 (2d Cir. 1970)). "[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing." *Id.* Pursuant to well-established case law, the judge or jury considers all relevant facts, including, but not limited to, whether or not defendants tried to cover up any infringement. See *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358 (Fed. Cir. 2016).

1.      Paragraph 26 reads:

On that same day, Ms. Von D received tremendous negative publicity when she showed up at the parlor, and attacked the media, knocking the hat off a female photographer's head. TAC, ¶26.

Defendant cannot advance the rights of third parties.  Further, this paragraph is supported by admissible news reports. See TAC Ex. 3; Garbarini Decl. at Ex. 16.  Moreover, it provides the basis for defendant's decision to withdraw at least three of the SEPHORA Advertisements on or before October 22, 2014.  This means the SEPHORA Advertisements were created, and distributed prior to the date of the sham invoice.

2.    Paragraph 55 reads:

The invoice produced by defendant is a complete sham, but irrelevant.

First, a sham is defined as "something which is not what it is purported to be."  This is an accurate description for the subject invoice for "three Signature Track Cues".  This paragraph is supported by admissible evidence in the form of Jonathan Sandler's website, Facebook pages, Twitter pages, and Signature Tracks website, Facebook pages, none of which identify any of the six Subject SEPHORA Advertisements. TAC at Ex. 6; Ex, Cupolo Decl. at ¶¶ 44-49, Ex, 7.

Other admissible evidence is in the form of emails to SEPHORA, and Signature requesting a license be produced, and emails from SEPHORA acknowledging receipt of the request.  Signature, which defendant claims was plaintiff's agent, did not produce anything, rather, defendant produced an invoice. TAC at Exs. Nos. 5.

Importantly, if the invoice was authentic, plaintiff would have been contacted before the invoice date for approval. Cupolo Decl. at ¶ 37.  It is vital plaintiff approve all license to make sure they don't conflict with other licenses. Cuplolo Decl. at ¶¶ 37-40.  Further, defendant used 5 of the 125 recordings in plaintiff's library. Cuplolo Decl. at ¶ 41.  These recordings cannot be licensed in the retail space again, and the fee for six national advertisements, in perpetuity, would

27

have been $60-75,000. Cuplolo Decl. at ¶¶ 33-43.   If this was a real license, plaintiff would have

also been paid; none of which ever happened. Cuplolo Decl. at ¶¶ 33-43.  Regardless, the

operative complaint, filed after defendant produced the subject invoice, covers five copyrighted

recording and six advertisements.

       3. Paragraph 106: Paragraph 106 reads:

> "Disturbingly, defendant's counsel knew full well that SEPHORA released the
> Subject Advertisements before the invoice date, and the fact that there were at
> least five copyrighted compositions and six advertisements produced. Yet counsel
> for defendant still used the bogus invoice as a weapon, repeatedly threatening
> plaintiff and plaintiff's counsel if this matter was not voluntarily dismissed."

Attorneys have an obligation to make a reasonable inquiry into the claims and their

client's records, they are charged with scrutinizing claims made by the client. See Rule 26(f);

*Brown v. Tellermate Holdings, Ltd..*, 2014 WL 2987051 (S.D. Ohio July 1, 2014).  Any

reasonable inquiry would have reveled SEPHORA used at least five of plaintiff's copyrighted

recordings, in at least six advertisements.  Further, SEPHORA released the advertisements

before October 22, 2014 which predates the purported invoice.

       Defendant then used the purported invoice to threaten:

- "We do not presently plan to seek Rule 11 sanctions and attorneys' fees, unless forced to spend additional time on this matter." Garbarini Decl. No. 10.
- "I believe a party risks violating Rule 11 when proceeding with a lawsuit, when there are no reasonable grounds to believe that a conflict exists." Garbarini Decl. No. 18.
- I need to stress the importance of your filing a request for dismissal before Monday, when I will have to begin drafting a reply to the complaint.  After that time, I expect that Sephora will direct me to seek fees and potential sanctions for the improper prosecution of this matter. Garbarini Decl. Ex. 19.

       Even in defendant's Memorandum of Law, they attempt to continue to mislead stating:

> "Signature Tracks ("Signature"), that Signature and another non-party, Jonathan
> Sandler ("Sandler"), obtained licenses for the works that are at issue in this action
> ("Works")".  Def Memo. of Law at pg. 1; and,

28

"Plaintiff admits that it was informed by Signature's founder, Adam Malka, that Signature issued a license to Sandler for the use in Sephora videos of the musical compositions *Signaling Through the Flame, Escapist, Call, Age of Wonder*, and *DEA*. Def. Mem. of Law at pg. 4.

Plaintiff was never informed by Adam Malka that *Signaling Through the Flame, Escapist, Call, Age of Wonder*, and *DEA* were licensed to SEPHORA, or anyone. Emanuele Decl. at ¶ 6. Malka has no idea what recordings were used, or what they were used for. Emanuele Decl. at ¶ 9. The invoice is for three Signature Track recordings, not five YESH recordings.

The judge or jury considers all relevant facts. *In re Seagate Technology*, LLC, 497 F. 3d 1360 (2007) (en banc). Defendant's attempt to cover-up the infringement with threats based on claims it knew to be false is probative of intent and supported by admissible evidence.

4. Paragraph 107 reads:

That is the mindset of the defendant, break the law and wait to see if they catch you.

The judge or jury considers all relevant facts. *In re Seagate Technology*, LLC, 497 F. 3d 1360 (2007) (en banc). Defendant's attempt to cover-up the infringement with threats based on claims it knew to be false is probative of intent and supported by admissible evidence.

5. Paragraph 109 reads:

Defendant has tried to bully itself out of liability in a case it has zero chance of prevailing.

The judge or jury considers all relevant facts. *In re Seagate Technology*, LLC, 497 F. 3d 1360 (2007) (en banc). Defendant's attempt to cover-up the infringement with threats based on claims it knew to be false is probative of intent and supported by admissible evidence.

6. Paragraph 110 reads:

29

We respectfully ask the Court to consider this behavior as well as all of the behaviors detailed in all prior allegations when it makes a determination on damages.

Again, plaintiff's recitals are true and accurate, backed by admissible evidence, and probative of intent. The judge or jury considers all relevant facts. *In re Seagate Technology, LLC*, 497 F. 3d 1360 (2007) (en banc).

7. Paragraph 114 reads:

> Defendant has a pattern and practice of illegally using copyrighted recordings without a license in its advertisements. For example, `Crimson and Clover' by Tommy James and the Shondells, and `I Love Rock and Roll' by Joan Jett and the Blackhearts appear in the video advertisement titled `Kat Von D Beauty pa Sephora' which appears at https://www.youtube.com/watch?v=EUa2CAC107c. This is a further example of defendant's blatant use of copyrighted material without a license.

This recital is supported by admissible evidence. There is no strong reason for the Court to tamper with the pleadings.

## X. CONCLUSION

For the forgoing reasons, plaintiff has established this Court's jurisdiction under CPLR 301, CPLR 302 (a)(1), CPLR 302(a)(2), CPLR 302(a)(4), and CPLR 302(a)(3). Jurisdiction under any of one of these statutes, moots any claim for a change of venue. Finally, well-established law excludes joint tort-feasors as indispensable parties. Even if defendant proves the two contested parties were involved, it is irrelevant.

Dated: February 27, 2017

By:_____

Richard Garbarini

30

CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2017 a copy of the foregoing was filed electronically on the Court's ECF system along with the annexed Declarations of Richard M. Garbarini, Esq., Richard Cupolo, and the Exhibits annexed thereto.

Dated: February 27, 2017

_____

Richard M. Garbarini

31